FILED

NOV X 4 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

GERMAN ZAMORA,                          No    1-08-cv-01130 VRW

        Petitioner,

                              ORDER DENYING PETITION
        v                       FOR WRIT OF HABEAS CORPUS

JAMES D HARTLEY,

        Respondent.

_____/

United States District Court
For the Eastern District of California

        Petitioner German Zamora, an incarcerated state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus under 28 USC § 2254 challenging a 2006 decision by the Board of Parole Hearings ("the Board") to deny him parole.  Doc #1. Respondent James D Hartley opposes the issuance of the writ.  Doc #20.

        For the reasons stated herein, the petition for habeas corpus is DENIED.

I

A

        Petitioner is a citizen of Mexico who was residing in Orange County in August 1993 when he committed the homicide for

**which he is now serving a sentence of seventeen years to life.  The**
**facts underlying petitioner's commitment offense were set forth in**
**the September 11, 2007 opinion of the Orange County superior court**
**denying his habeas petition:**

> **By the early hours of August 12, 1993, petitioner and**
> **his friend had consumed a significant amount of beer.**
> **Sometime after 2 am, the two left a restaurant heading**
> **towards the friend's home.  Shortly thereafter, the**
> **friend observed police lights behind them and**
> **repeatedly asked petitioner to stop the car.  An**
> **intoxicated petitioner ignored his friend's pleas and**
> **began to aggressively evade police while reaching**
> **speeds in excess of 100 miles per hour and running**
> **several stop lights.**
>
> **Without stopping for another red light, petitioner**
> **struck another vehicle in an intersection while**
> **traveling between 80 and 100 miles per hour.  The**
> **victim's vehicle flipped over from the impact. The**
> **driver of the vehicle suffered a broken rib, a broken**
> **elbow, a head injury, and had his spleen removed.  A**
> **passenger in the same car died.  Petitioner's blood**
> **alcohol content was .16.**
>
> **At trial, petitioner admitted having sustained a prior**
> **driving under the influence conviction and also being**
> **aware that he could not drive without a license or with**
> **alcohol in his system.  Though he does not recall the**
> **accident itself, petitioner admits having fled from**
> **police because his license was suspended at the time**
> **and he did not want to be arrested.**

**Doc #20 Ex 2.**

**In March 1994, petitioner was convicted by a jury of**
**second degree murder (Cal Penal Code § 187(a)), driving under the**
**influence and causing great bodily harm to another (Cal Vehicle**
**Code § 23153(a) and § 23153(a)).  Ptn (Doc #1) at 2.  In July 1994,**
**petitioner was sentenced to seventeen years to life in prison with**
**the possibility of parole.  Id.  Petitioner states that he did not**
**appeal his judgment, id, but the Board quoted extensively from a**
**"Court of Appeals document dated November 13, 1995" that contains a**
**lengthy description of the crime; given the date and content, this**

opinion was presumably written in response to a direct appeal. Board hearing transcript dated December 19, 2006 ("Board RT"), Doc #1 Ex B, at 13-18.

Petitioner's first parole hearing took place on October 22, 2003. The Board denied him parole for three years. Board RT at 25.

At petitioner's next parole hearing in December 2006, petitioner testified through an interpreter that: he had never attended court-ordered Alcoholics Anonymous sessions after his first DUI conviction (Board RT at 17); he had been out looking for a prostitute on the night of the crime (id at 18); he drank "maybe four times a year" before the crime (id at 21); he had entered the United States illegally in 1991 and was working as a waiter in a restaurant in 1994 (id); and he was subject to an "INS hold" that would result in his deportation to Mexico upon his release (id at 25, 59).

The Board reviewed petitioner's disciplinary record, noting that he had no "115's and no 128(a)'s" (in-prison disciplinary write-ups)(id at 25), and his educational and vocational programs in prison, noting that petitioner was working toward his GED and had completed training in upholstery and "mill and cabinet" and was then being trained in vocational office services. Id at 26. The Board reviewed petitioner's self-help and therapy programs and noted he had completed fifty-five months of Alcoholics Anonymous, thirty-six months of Narcotics Anonymous and all the lessons in Criminon. Id at 27-30.

The Board considered evidence in the form of letters from petitioner's family members offered to substantiate petitioner's

3

1   post-parole plan to return to his home town in Mexico, live with
2   his parents and earn a living using the vocational skills he had
3   learned in prison.  Id at 36-45.  The presiding commissioner asked
4   petitioner "part of the work in AA is making amends to your
5   victims.  Have you done anything in regard to that?" to which
6   petitioner replied "No, but I have it in mind to do it."  Id at 47.

7        The Board heard testimony from the Orange County deputy
8   district attorney arguing against parole based on petitioner's
9   "lack of insight into the causes of the commitment offense, namely,
10  he continues to view this as an accident or something that was
11  unplanned * * *" and that less than one year had elapsed between
12  the DUI conviction and the commitment offense.  Id at 49-52.
13  Petitioner's attorney made a statement stressing his lack of
14  disciplinary problems in prison, his accomplishments while
15  incarcerated, his family support and the positive aspects of the
16  psychological report.  Id at 52-54.

17       The Board reviewed a psychological evaluation by Dr
18  Stephen Walker dated September 18, 2003.  The report, which runs to
19  just over nine single-spaced pages of small type, described
20  petitioner as "not sophisticated, either psychologically or
21  socially" and "not psychopathic, nor particularly criminally
22  minded, outside of a level of self-focused irresponsibility that
23  served as a central component of his alcoholism."  Doc #1 Ex C at
24  8.  In conclusion, the report was generally encouraging:

25           The index offense presents as a crime of reckless,
             alcohol-saturated and self-centered violence, and was
26           committed on innocent bystanders while the inmate was
             irresponsibly fleeing police officers to avoid being
27           caught for criminal behavior (DUI, reckless driving,
             suspended license, illegal immigrant).  The inmate had
28           no history of violent behavior prior to the instant
             offense; however, he did have one prior arrest and

                                    4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

> conviction for DUI less than a year prior to the life
> crime. * * *
>
> There are no signs of a mental disorder, either
> historically or currently.  His risk for harmful
> behavior is clearly exacerbated by the use/abuse of
> alcohol, and in association with related decreases in
> judgment and reasoning.  Alcohol use was a steady
> component in the inmate's history, and he understands
> himself to be an alcoholic, with a need for lifetime
> abstinence in order to assure a life free of
> devastating physical harm to himself or others.  Mr.
> Zamora has indicated his plans to continue with AA
> meetings in Mexico, in order to help ensure his
> continued abstinence.  Nonetheless, due to the nature
> of his proclivity for alcohol use, he will remain at a
> higher risk for alcohol abuse than will people in the
> general population.
>
> Risk assessment measures suggest that the inmate poses
> a low likelihood to become involved in a violent
> offense if released into the free community. * * * In
> addition, there is the caveat that such an assessment
> is at least partially based on the likelihood of
> continued abstinence from any substance abuse.
>
> The inmate has been disciplinary-free for his entire
> none-year incarceration, and has also been free of
> counseling chrono write-ups.  His classification/
> placement score is zero (and has been since 2001),
> suggesting a sustained behavioral ability to refrain
> from blatantly undesirable activities, and an applied
> capacity to focus on a more prosocial program.

18 Id at 9 (emphasis in original).

19      In rendering the Board's decision that petitioner was not
20 suitable for parole and would pose an unreasonable risk to society
21 or threat to public safety if released, the presiding commissioner
22 stated that the "first and foremost" factor was the commitment
23 offense itself, noting that multiple victims were involved, the
24 crime "was carried out in a manner which demonstrates the
25 exceptionally callous disregard for human suffering" and the motive
26 was "very trivial in relation to the offense."  Board decision, Doc
27 #1 Ex B (& Doc #20 Ex 1 Ex B) at 56.  The presiding commissioner
28 specifically discussed the Walker psychological report,

5

1 characterizing it as "not totally supportive of release" because
2 the "low" risk assessment was "at least partially based on the
3 likelihood of continued abstinence from alcohol which * * *
4 represents a conundrum for the panel that the panel still believes
5 that Mr Zamora does not seem to grasp [] that this was a crime
6 * * *." Id at 58-59. The Board found petitioner's residential
7 plans appropriate and commended him for his clean disciplinary
8 record in prison and his vocational training accomplishments,
9 noting them to be "exceptional" (id at 60), but noted that the
10 positive factors did not outweigh the factors for unsuitability and
11 "it is not reasonable to expect that parole will be granted during
12 the next three years." Id at 61.

13     Petitioner filed a petition for a writ of habeas corpus
14 in superior court in Orange County challenging the Board's decision
15 on due process grounds. The superior court upheld the Board's
16 conclusion that petitioner was not suitable for parole:

17          The way in which the commitment offenses were carried
18          out and petitioner's motive for his actions reasonably
             warrant the Board's on-going concern over petitioner's
19          suitability for release on parole at this time.
             Despite having a suspended license and being on
20          probation for a prior driving under the influence
             conviction, petitioner made the conscious decision to
21          drink alcohol to the point of intoxication and get
             behind the wheel of an automobile.

22 Doc #20 Ex 2 at 2. The superior court also discussed the Walker
23 evaluation, expressing doubt about the favorable risk assessment
24 based on Walker's finding that petitioner's "risk for future
25 alcohol abuse remains high compared to the general population" and
26 concluding that the Board "cannot be said to have abused its
27 discretion" in its handling of the Walker evaluation. Id at 4.
28 The superior court also noted that the record reflected "due

6

consideration of petitioner's eligibility for parole and a sufficient evidentiary basis for the Board's decision" and the "individualized consideration of the specified criteria" required by law.  Id at 5-6.  Applying the standard articulated in In re Rosenkrantz, 29 Cal 4th 616, 658 (2002)("courts may only inquire whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation"), the court denied the petition.

Petitioner next filed in the court of appeal, which summarily denied his petition on October 4, 2007.  Doc #20 Ex 4. Petitioner next filed in the California Supreme Court, which summarily denied his petition on May 21, 2008.  Doc #20 Ex 6.

Petitioner submitted his federal petition herein to the clerk of the United States District Court for the Central District of California on July 7, 2008; it was transferred and ultimately filed in this court on August 5, 2008.  Doc #1.  Respondent filed an answer opposing the issuance of a writ (Doc #20) and petitioner filed a traverse.  Doc #21.

II

28 USC § 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."  Sass v California Board of Prison Terms, 461 F3d 1123, 1126-27 (9th Cir 2006).  The petition cannot be granted unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

United States District Court
For the Eastern District of California

1 **States," or "was based on an unreasonable determination of the**
2 **facts in light of the evidence presented in the State court**
3 **proceeding."   28 USC § 2254(d)(West 2009).**

4          **California Penal Code § 3041 vests all California**
5 **prisoners whose sentences provide for the possibility of parole**
6 **with a constitutionally protected liberty interest in the receipt**
7 **of a parole release date.   Irons v Carey, 505 F3d 846, 850 (9th Cir**
8 **2007).   See also Sass, 461 F3d at 1128-29; McQuillion v Duncan, 306**
9 **F3d 895, 900 (9th Cir 2002).**

10          **The Supreme Court has held that "revocation of good time**
11 **does not comport with the 'minimum requirements of procedural due**
12 **process,' unless the findings of the prison disciplinary board are**
13 **supported by some evidence in the record."   Superintendent,**
14 **Massachusetts Correctional Inst v Hill, 472 US 445, 454 (1984).**
15 **The Ninth Circuit has applied the Hill standard to the parole**
16 **context: "a parole board's decision deprives a prisoner of due**
17 **process with respect to this interest if the board's decision is**
18 **not supported by 'some evidence in the record.'"   Irons, 505 F3d**
19 **846 at 851 (citing Sass, 461 F3d at 1128-29).**

20          **Respondent asserts that the "some evidence" standard is**
21 **not clearly established law for purposes of AEDPA because the**
22 **Supreme Court has never used it in the context of parole**
23 **proceedings.   Doc #20 at ¶¶ 8-11.   But this court is bound by Ninth**
24 **Circuit rulings applying the Hill standard to parole suitability**
25 **determinations.   See Irons, 505 F3d at 851; McQuillion, 306 F3d at**
26 **904; Biggs v Terhune, 334 F3d 910, 915 (9th Cir 2003).**

27          **In order to determine whether a state court's decision**
28 **was in fact an unreasonable application of clearly established**

United States District Court
For the Eastern District of California

8

1  **federal law, the federal court reviewing a habeas corpus petition**
2  **must "look through" to the last reasoned decision of the state**
3  **court.  Ylst v Nunnemaker, 501 US 797, 803-04 (1991); Avila v**
4  **Galaza, 297 F3d 911, 918 (9th Cir 2002).  Accordingly, this court**
5  **must examine the decision of the superior court.**

6  **Reviewing federal courts "must look to California law to**
7  **determine the findings that are necessary to deem a prisoner**
8  **unsuitable for parole, and then must review the record in order to**
9  **determine whether the state court decision holding that these**
10 **findings were supported by 'some evidence' constituted an**
11 **unreasonable application of the 'some evidence' principle**
12 **articulated in Hill."  Irons, 505 F3d at 851.**

13 **California Penal Code § 3041(b) (West 2009) provides**
14 **that, when considering parole for a prisoner who has served the**
15 **minimum number of years to become eligible, the parole board "shall**
16 **set a release date unless it determines that the gravity of the**
17 **current convicted offense or offenses, or the timing and gravity of**
18 **current or past convicted offense or offenses, is such that**
19 **consideration of the public safety requires a more lengthy period**
20 **of incarceration * * *."  California Code of Regulations § 2402(a)**
21 **(West 2009) sets forth the criteria for determining suitability for**
22 **parole: "[r]egardless of the length of time served, a life prisoner**
23 **shall be found unsuitable for and denied parole if in the judgment**
24 **of the panel the prisoner will pose an unreasonable risk of danger**
25 **to society if released from prison."  Id.  Information to be**
26 **considered includes all relevant, reliable information such as the**
27 **prisoner's social history, past and present mental state, past**
28 **criminal history, the base and other commitment offenses, past and**

1 present attitude toward the crime and any other information which
2 bears on the prisoner's suitability. 15 Cal Code Regs § 2402(b).

3 Under these regulations, the circumstances tending to
4 show that a prisoner is unsuitable include: the commitment offense,
5 the offense having been committed in "an especially heinous,
6 atrocious or cruel manner"; prisoner's previous record of violence;
7 "a history of unstable or tumultuous relationships with others";
8 commission of "sadistic sexual offenses"; "a lengthy history of
9 severe mental problems related to the offense" and "serious
10 misconduct in prison or jail." 15 Cal Code Regs § 2402(c)(A)-(E).

11 Circumstances tending to show that a prisoner is suitable
12 for parole, on the other hand, include: lack of a juvenile record;
13 reasonably stable relationships with others; remorse; no
14 significant history of violent crime; "realistic plans for release
15 * * * or marketable skills that can be put to use upon release";
16 "[i]nstitutional activities indicat[ing] an enhanced ability to
17 function within the law upon release." 15 Cal Code Regs § 2402(d).

18 While the "some evidence" standard is deferential, it
19 ensures that "the record is not so devoid of evidence that the
20 findings of [the Board] were without support or otherwise
21 arbitrary." Superintendent v Hill, 472 US at 457. Determining
22 whether this requirement is satisfied "does not require examination
23 of the entire record, independent assessment of the credibility of
24 witnesses, or weighing of the evidence." Id at 455-56. Due
25 process does require that the evidence underlying the Board's
26 decision have some indicia of reliability. Biggs, 334 F3d at 915;
27 McQuillion, 306 F3d at 904. Due process is flexible and calls for
28 the procedural protections that particular situations demand; a

United States District Court
For the Eastern District of California

10

1 **parole denial procedure that affords an opportunity to be heard and**
2 **that informs the prisoner in what respects he falls short of**
3 **qualifying for parole may be constitutionally sufficient.**
4 **Greenholz v Inmates of Nebraska Penal & Correctional Complex, 442**
5 **US 1 (1979).**

                                        **III**

8 **Petitioner makes two general arguments in support of his**
9 **claim that the Board's decision violated his due process rights**
10 **under federal law: (1) the commitment offense was not "especially**
11 **heinous nor was it carried out in a manner which demonstrates an**
12 **exceptionally callous disregard for human suffering" and (2) the**
13 **Board's decision that petitioner would pose an unreasonable risk of**
14 **danger to public safety if he were released from prison was not**
15 **supported by "some evidence." Ptn at 1, 9.**

16 **The record of the Board's proceedings reflects that the**
17 **Board undertook an individualized consideration of petitioner's**
18 **case. Both petitioner and his attorney were given an opportunity**
19 **to speak. Petitioner was provided with an interpreter and spoke at**
20 **length on the record through the interpreter. The Board**
21 **acknowledged petitioner's absence of disciplinary problems and**
22 **exceptional record of achievement in prison, including his**
23 **participation in AA. Petitioner argues that he "was as recovered**
24 **from his alcoholism as it is possible for an individual to be."**
25 **Ptn at 10. But the Board's decision did not rest on a belief that**
26 **petitioner's alcoholism was currently active, but rather on doubts**
27 **that petitioner would abstain from alcohol in the future; these**
28 **doubts, in turn, rested on petitioner's own statements suggesting**

United States District Court
For the Eastern District of California

                                        **11**

1  that he had not fully taken responsibility for the choices he made
2  that caused the commitment offense.  For example, the Board noted
3  that petitioner persisted in referring to the fatal collision as an
4  "accident."

5        The Board also gave focused consideration to the Walker
6  psychological report and made detailed findings about it,
7  specifically declining to accept its conclusion that petitioner
8  represented a "low" risk to the community if released and
9  explaining its reasons for doing so.  The Board informed petitioner
10  of the reasons why he was deemed unworthy of parole and made
11  recommendations to him for receiving more favorable consideration
12  in a subsequent hearing.

13        In conclusion, the Board's finding that petitioner
14  currently poses a threat to public safety is supported by "some
15  evidence."  The superior court's application of Rosenkrantz was
16  appropriate.  Rosenkrantz sets forth a standard identical to the
17  federal standard applicable to parole cases as discussed above
18  herein.  Accordingly, the state court's evaluation of petitioner's
19  claim did not "result in a decision that was contrary to, or
20  involved an unreasonable application of, clearly established
21  Federal law, as determined by the Supreme Court of the United
22  States" or was "a decision that was based on an unreasonable
23  determination of the facts in light of the evidence presented in
24  the State Court proceeding."  28 USC § 2254(d).

25        On the other hand, petitioner's record of exemplary
26  conduct and achievement in prison makes this case one in which
27  continued reliance on the circumstances of the commitment offense
28  will warrant increased judicial scrutiny in the habeas corpus

12

1  context in the event of one or more future denials of parole.
2  Given that petitioner had not yet served his minimum term at the
3  time of the parole denial at issue here, however, the court does
4  not find the concern to reach constitutional dimensions.  Irons,
5  505 F3d at 853 (noting that in all of the cases in which court had
6  previously held that a denial of parole based solely on the
7  commitment offense comported with due process, prisoner had not yet
8  served the minimum number of years required by his sentence).
9  There is, therefore, no basis for federal habeas relief.

IV

12       For the reasons stated herein, the petition for a writ of
13  habeas corpus is DENIED.  The clerk is directed to close the file
14  and terminate all pending motions.

16       IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

13